IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLEOPHUS COLLIER,<br><br>Defendant. | 4:24CR3067<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant Cleophus Collier's Motion to Suppress. Filing No. 20. Defendant seeks to suppress statements and evidence obtained pursuant to the warrantless search of a bag. The Court held a hearing on the pending motion on February 26, 2025. It ordered a transcript of the hearing and deemed the matter submitted upon receipt of the transcript. A transcript of the proceedings has been filed and the matter is now ripe for disposition. For the reasons discussed below, the undersigned recommends the Court deny Defendant's motion to suppress.

**STATEMENT OF FACTS**

After hearing the testimony of Officer Jason Papke and reviewing the exhibits submitted at the motion to suppress hearing, the undersigned finds the following facts are credible.

In June 2024, Officer Papke received a warrant for Defendant from the United States Marshals Service. Filing No. 34 at 6. At the time, Papke was a task force officer ("TFO") deputized by the Marshals to apprehend individuals with felony warrants. Filing No. 34 at 5.

Officers attempted to apprehend Defendant on June 10, 2024. Filing No. 34 at 8. Papke and an LPD officer were the first officers to arrive at Defendant's last-known address (a triplex). Filing No. 34 at 9. Papke saw Defendant taking the trash out to the curb. Filing No. 34 at 10. Officers originally planned to arrest Defendant inside the triplex. Filing No. 34 at 12. However, when Papke saw Defendant outside, he decided to do an "open-air takedown." Filing No. 34 at 12. Papke testified apprehending Defendant this way prevented Defendant from accessing weapons inside the triplex but carried its own risks. Filing No. 34 at 12. Specifically, Papke testified "[o]pen-air takedowns are also very dangerous and dynamic and uncertain [be]cause a person can run—attempt to escape a perimeter or produce weapons." Filing No. 34 at 12.

Papke observed Defendant wearing a black sling bag (a fanny pack) over his shoulder with the pouch in front of his torso. Filing No. 34 at 13. Wearing the bag in this manner allowed Defendant "to have immediate access to the bag and anything inside of it." Filing No. 34 at 13. Papke testified this style of bag is suspicious because "within the last two years," he has begun "to see a lot of people, especially people with gang affiliations, wear th[is] style of bag on their person. It allows them to easily conceal a handgun that they can quickly access that law enforcement can't see." Filing No. 24 at 46–47. Papke also testified he has "seen individuals wear th[is] type of bag as opposed to a large backpack to carry around user amounts of narcotics and paraphernalia." Filing No. 24 at 47.

Papke parked his unmarked truck in front of Defendant, opened the door, produced a firearm, and directed Defendant to, "Stop, Police." Filing No. 34 at 14. Papke was in plain clothes, wearing an external armor carrier with a large "Police" placard. Filing No. 34 at 14, 32. Defendant reacted by placing his hands out to his sides in a nonthreatening manner, turning around, and walking twenty-five to thirty feet away from Papke. Filing No. 34 at 15, 17. As Defendant walked away, Papke continued to give commands. Filing No. 34 at 15. Defendant did not stop walking until another officer, a Marshal, mounted the curb, drove through the lawn, produced his firearm, and also

2

"g[ave] commands." Filing No. 34 at 16.[1] Other officers positioned themselves strategically nearby to apprehend Defendant if he fled. Filing No. 34 at 16. There were ultimately five officers present at the scene. Filing No. 34 at 33.

After Defendant stopped walking, he began to comply. Filing No. 34 at 16. He faced Papke, removed the bag from his person (without being instructed to do so), and dropped the bag on the ground before taking two small steps away from the bag. Filing No. 34 at 16–17; Exhibit 1 at 0:00–00:06. Defendant did not try to reach into the bag or open it up. Filing No. 34 at 35. Papke testified he "fe[lt] that [Defendant] was intentionally trying to separate himself from the bag," Filing No. 34 at 31, and that Defendant "gave all the standard indications of somebody trying to separate himself from something he didn't want to be caught with that was on his person." Filing No. 34 at 49–50.

An officer ordered Defendant to "Turn around. Put your hands up in the air. Do not move." Exhibit 1 at 00:04–00:09. Defendant raised his hands and slowly walked backwards another five or six steps towards the officers, who placed him in handcuffs. Exhibit 1 at 00:04–00:22. At this point, Defendant was approximately ten feet away from the bag with three officers behind him. Filing No. 34 at 20, 39. Papke testified Defendant was still within lunging distance of the bag at this point. Filing No. 34 at 38, 40. The undersigned finds this testimony credible. The BWC footage shows it takes Defendant no more seven or eight small to average sized steps, mostly traveling backwards, to traverse the distance between the bag and the spot he was placed into handcuffs after he drops the bag and walks towards the officers. Exhibit 1 at 0:00–00:11.

The three officers then escorted Defendant past the bag, towards the last unit of the triplex (Defendant was handcuffed near the first unit). At some point during this 30-second walk, one of the officers opens Defendant's bag and sees a gun. Exhibit 1 at 1:13–1:46. It appears from the BWC footage that the officer who opened the bag did so while roughly keeping pace with the remaining two officers escorting Defendant. *Id.*

---

[1] Officer Papke testified to these facts. There is no BWC footage recording the beginning of the encounter. Filing No. 34 at 24. Papke testified he did not activate his BWC recorder immediately due to safety concerns. Filing No. 34 at 25. He also testified there is a delay of several seconds between the moment when he activates the recorder and when the recorder starts recording. Filing No. 34 at 25. The undersigned finds Papke's testimony as to what transpired before the BWC recorder started recording credible.

Officers did not obtain a warrant or Defendant's consent to search the bag. Filing No. 34 at 45.

Papke testified Defendant was not under complete control after he was placed into handcuffs and restrained by three officers. Filing No. 34 at 39–40. Specifically, he testified it often "takes numerous officers, sometimes two or more on each arm, to control those arms [because] a person's stronger pulling in if they're reaching for items on their person or items nearby." Filing No. 34 at 39. Papke also testified someone is not necessarily "fully secure and safe" with handcuffs on because "people also in [his] experience in numerous situations slip their handcuffs." Filing No. 34 at 39. He testified that, although Defendant was not resisting, in his experience, individuals may feign compliance prior to assaulting officers. Specifically, he testified:

> I would say that I've had numerous situations in my career where somebody feigns compliance and then actively assaults us. I was personally involved in a case where a person was in a very similar manner feigning compliance, saying he was gonna give himself up to us, began walking towards us to place himself into custody, then ultimately produced a firearm and killed an officer that was on scene.

Filing No. 34 at 38–39. The undersigned finds this testimony credible. Notably, the BWC footage shows Defendant is a fit, adult man of equivalent height and build to the officers standing behind him.

Defendant was ultimately transported to jail, *Mirandized*, and interrogated about the gun. Filing No. 34 at 47; Exhibit 5. Defendant is charged in the instant case with one count of knowingly possessing a firearm as a prohibited person. Filing No. 1. Defendant seeks to suppress incriminating evidence arising from the search of the bag, namely, the gun and his incriminatory statements about the gun.

## ANALYSIS

Defendant challenges the warrantless search of the bag[2] and argues his statements should be suppressed as "fruit" of the search. The government argues, in relevant part,[3] the search incident to arrest exception applies.

"'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "A search incident to arrest may lawfully extend to 'the arrestee's person and the area within [their] immediate control,' that is, 'the area into which an arrestee *might* reach in order to grab a weapon or evidentiary items.'" *United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010) (emphasis added) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). "This exception 'derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.'" *Id.* (quoting *Gant*, 556 U.S. at 338). The Eighth Circuit has "rejected the notion that an officer's exclusive control of an item necessarily removes the item from the arrestee's area of immediate control." *Id.* (collecting cases).

Here, officers arrested Defendant pursuant to a warrant. Officer Papke initially pointed a firearm at Defendant and ordered him to, "Stop, Police." Defendant did not comply. Instead, he turned around and started walking away from Papke. Defendant made it twenty-five to thirty feet before he stopped walking when another officer mounted the curb, drove through the lawn, pointed a firearm at Defendant, and "g[ave] commands." Defendant then voluntarily removed the bag he was wearing, placed it on the ground, and moved slowly towards the officers, who placed him in handcuffs. At the time Defendant was handcuffed, he was ten feet away from the bag with three officers standing behind

---

[2] The parties disagree as to whether Defendant abandoned the bag and, thus, lacks standing to challenge the search. The Court need not decide this issue because the undersigned recommends the Court deny Defendant's motion on other grounds. Accordingly, the undersigned presumes, without deciding, that Defendant has standing to challenge the search of the bag.

[3] The Court need not address the parties' arguments pertaining to probable cause or reasonable suspicion. The undersigned's conclusion on whether the search incident to arrest exception applies is determinative.

him. The bag was still within lunging distance at this point. The three officers then escorted Defendant past the bag towards the end of the triplex. At some point during this walk, one of the officers searched the bag. Upon reviewing the BWC footage, it appears the officer searching the bag roughly keeps pace with the remaining two officers still escorting Defendant during this 30-second walk.

The Eighth Circuit's decision in *Perdoma* is instructive on whether the bag was still in Defendant's control when it was searched. In *Perdoma*, defendant was carrying a small bag through a bus terminal. 621 F.3d at 747. Defendant ran when an investigator approached him to ask questions. Officers wrestled defendant to the ground (arresting him), handcuffed defendant, and escorted him to a different part of the terminal, where one officer searched defendant and another officer searched his bag. *Id*. at 748. Defendant argued the bag was no longer within his control "because he was restrained and a police officer had taken control of the bag." *Id*. at 750. The Eighth Circuit upheld the search of defendant's bag as a valid search incident to arrest because "the search of the bag occurred in close proximity to where [defendant] was restrained," and defendant "had already run from the officers once, and the officers did not know how strong he was." *Id*. at 750–51.

Defendant relies on *United States v. Allison*, 637 F. Supp. 2d 657 (S.D. Iowa 2009), *aff'd on other grounds*, 454 Fed. App'x 521 (8th Cir. 2011) in support of his argument that the search of the bag was not a valid search incident to arrest. In relevant part, one of the defendants in *Allison* was detained (handcuffed but not arrested) during a traffic stop, leaning against the rear bumper of the stopped car, and surrounded by three officers, when an officer removed defendant's gym bag from the backseat of the car. The Southern District of Iowa concluded the officer was not justified in searching the gym bag under the search incident to arrest exception in part because the "[d]efendant had no ability to access the interior of the [stopped car], much less the contents of the gym bag." *Id*. at 666. Unlike the instant case, however, an officer testified in *Allison* that the "[d]efendant, handcuffed and surrounded by three law enforcement officers, was under control and posed no threat to the officers." *Id*. at 663.

Here, Officer Papke credibly testified Defendant was not under complete control when he was handcuffed with three officers standing behind him. Papke testified, in his experience, individuals in Defendant's position may slip their handcuffs and it may take two or more officers on each arm to prevent an individual from lunging for nearby items. The BWC footage shows Defendant is a relatively fit man of a similar height, age, and build to the arresting officers. Moreover, the circumstances surrounding Defendant's arrest bolster the finding he might slip the handcuffs to lunge towards the bag.

Defendant was apprehended in a "open-air takedown"—a procedure Papke describes as dangerous, dynamic, and uncertain. Defendant did not resist after he was handcuffed. However, Defendant did ignore Papke's drawn firearm and his initial order to "Stop, Police." He walked twenty-five to thirty feet after Papke's initial command and only stopped walking when another officer drove through a lawn and drew his firearm.

Perhaps most importantly, the bag in this case was not in the backseat of a car. It was not even within the exclusive control of an officer for the majority of the encounter. The bag remained in "close proximity" to Defendant until it was searched. *See Perdoma*, 621 F.3d at 750–51.

Under these circumstances, the bag was in Defendant's immediate control and officers were justified in searching the bag incident to Defendant's arrest. *Cf. United States v. Hill*, No. 4:17CR310, 2020 WL 2750291, at *6–7 (E.D. Mo. Apr. 7, 2020), *R. & R. adopted by* 2020 WL 2747744 (E.D. Mo. May 27, 2020) (search incident to arrest exception applied to search of backpack defendant was wearing at time of arrest when officer cut backpack off defendant and searched backpack while defendant was handcuffed after defendant resisted arrest); *United States v. Homedew*, No. 4:16cr0145, 2016 U.S. Dis. LEXIS 195101, at *4, 11–12 (S.D. Iowa Dec. 22, 2016), *aff'd on other grounds*, 895 F.3d 1083 (8th Cir. 2018) (search of defendant's backpack after he was handcuffed and backpack was within officer's control was a valid search incident to arrest because it was still located within lunging distance right next to him).

Defendant also argues the Court should exclude statements made during his interview at the jail on the grounds that officers would not have questioned him about the gun but for the search of the bag. Generally, absent an exception, the Court should

exclude evidence deriving from illegally obtained evidence. *See Wong Sun v. United States*, 371 U.S. 471, 416 (1963). As set forth above, the warrantless search of the bag is justified by the search incident to arrest exception. Accordingly, the Court should not suppress Defendant's statements.

## CONCLUSION

IT IS HEREBY RECOMMENDED to the Honorable Susan M. Bazis, United States District Judge, that Defendant's motion to suppress, Filing No. 20, be denied in its entirety.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this Court may be held to be a waiver of any right to appeal the Court's adoption of the recommendation.

Dated this 24th day of April, 2025.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge